May it please the Court, Kevin Page for Ramon Alvear. Your Honors, this Court has held for 25 years that the lynchpin of good cause in a revocation hearing is reliability. It has never once permitted the government to rely on hearsay in a revocation that it did not consider reliable. Could we even get to the question of good cause if the statements are non-testimonial? You do. The Court would. And the Fifth Amendment right of cross-examination does not turn on testimoniality of the – Do you think that the Fifth Amendment right of – the due process right in the Fifth Amendment is broader than the Sixth Amendment right to confront your witnesses at trial? It's merely different. It covers – it has a different scope. In some cases, you would have a Fifth Amendment right that would cover cases that the Sixth Amendment right of confrontation wouldn't. And in some cases, you would not. Suppose we just know for – just by hypothesis that this particular statement is non-testimonial and you would not have a right to confront before we get to anything about good cause and anything else. You would not have a right to confront the person who makes this statement at trial. Why would you necessarily have the right to confront under the due process clause at a revocation hearing? Well, because under the – even if you didn't have a right under the Sixth Amendment right to confrontation, you would still have – in that case, you would still have a right to exclude evidence and to confrontation that are based in the federal rules of evidence as a backup in that. I'm asking just a purely constitutional question. We know from 1972, from the first time the court ever – the Supreme Court ever talked about the right to confront at what was then a parole revocation hearing, we know that that right, whatever the content of it is, it has to be narrower than the right to confront at trial. It has to be. So then before we even get to good cause and all the rest of it, just the thing that was triggering the constitutional question, not the rules of evidence, not the due process clause, I'm just talking about the right to confront. So I would think that we would have to start with the question, is the statement at issue testimonial? Well, it is – I would submit that it is testimonial, but the Morrissey statement that it is narrower than the Sixth Amendment right to confrontation does not necessarily mean that it is a subset of the right to confrontation, that something can be narrower than something else that does not completely overlap with it. So there are protections that are available under the Fifth Amendment right to due process which are simply to create an accurate and verifiable grounds for revocation because that is the essence of the due process protection is to make sure that we are not imprisoning people for conduct that hasn't been established that we may not have done, whereas the Sixth Amendment right to confrontation, as the exegesis of that right is described in Crawford and Melendez-Diaz in those cases, is very much to restrain the government, to make sure that the government doesn't have a role in creating evidence against the accused that could expand its powers more than we could tolerate in liberty, even if it is reliable. So – but to question the premise a little bit, I do think the question that this is very clearly testimonial because, I mean, if you look at the difference between Davis and Hammond, in those cases this is not a situation where the declarant has called to meet an ongoing emergency. That would be the case if she had called while she was in the car or maybe very shortly thereafter still in his presence. This is a situation where she is giving information to the police in order to assist them in making a case against them later. I think that clearly in the distinction that's drawn between Davis and Hammond, this is testimonial. Some of the statements she's making are purely in the context of an ongoing relationship with the probation officer. We call and talk about how things are going. Where is the defendant? Oh, he's living with you. Oh, that's interesting. It's not in the context – and by the way, the person who's making the phone call is the declarant. It's not like the police are bringing somebody in for an interrogation or trying to collect evidence and conducting an investigation. It's just a conversation initiated by the girlfriend, wife, the declarant in the case. So it would strike me that maybe it's testimonial, maybe it's not. But the first question should be is it testimonial? And then we would have to go through and discuss each statement, right? Well, to do that, we would clearly have to – excuse me. I think the Court would clearly have to reverse the case if the statement related to the probation officer on the day after the assault and – alleged assault and the statement made to the police officer immediately after the assault were testimonial because those were the evidence – that was the evidence – or if those were unconstitutional without being testimonial because those were the evidence – that is the evidence of the most serious violation. That is the violation that's triggered under 7b.1.3 that the guidelines recommend revocation for. And it is the violation that clearly is animating the decision to revoke in that case. So those – even without considering the address questions and the ongoing discussion of the relationship with the probation officer, it is impossible to say that that was not for an ongoing investigation when it was not occurring to meet an ongoing emergency. If she's just talking to the probation officer about not in an effort to initiate legal proceedings or where the probation officer is attempting to initiate legal proceedings in that situation, then you might have a closer case. But at a minimum, this Court's precedent, United States v. Jackson, United States v. Colin Jackson, tells us that it is the government's burden to show non-testimoniality. So without knowing at least that the – knowing more about the conversation with the probation officer and the declarant's motive in that situation, we can't say that the government has met its burden to show that that was not for the purpose of an ongoing investigation. Let's assume, arguendo, that it was testimonial. The two statements that you say are the most critical to the findings against your client. Talk to us about the good cause. Haven't we found that fear is a good cause to not appear? I don't believe that this Court has. I would not think that there is any case. The government cannot cite a case in which this Court has held that non – that testimony that is not – or out-of-court information that is not corroborated by scientific  No, but, I mean, fear is a relevant consideration. I mean, I'm not saying it's necessarily dispositive, but we have found that. It's a relevant consideration. This Court has never held that out-of-court information may be admitted in a revocation hearing when it did not find that information to be reliable. Don't your client's statements give it an indicia of reliability? I mean, your client admitted he marked her neck by passionately touching her. He did not, Your Honor. Tell me why that's not accurate. What he said was, after this conversation, he said that he caused a cut on her cheek based on her – with her braces. Now, the allegation against him and the allegation made by the declarant in this case was that he choked her and that there is no mark consistent with that, and a cut on the cheek is not consistent with that. And the declarant never indicated that that mark – first of all, nobody's ever seen that mark. The police officer didn't see that mark. The client admitted it. That he – that there was a mark on her cheek that was consistent with a love touch because of passion. Passionate touching. And one person's passionate touching is another person's choking. Well, if it was – if the passionate touching is on the neck and not the cheek, then one person's passionate touching may be another person's choking, but that's not what happened here. And that only illustrates, I think, the very strong interest that the defendant had in cross-examination in this case because we would have a question there about what – we could then ask the declarant, where was the mark? Was there a mark on your cheek? Why didn't you tell the police officer about it if that was going to be the basis for revocation or even for corroboration in this case? So this – and to answer – to just circle back and answer Judge Haynes's question about fear, the case that most clearly presents the question of whether fear may outweigh – may constitute good cause in the absence of reliability is Baker, in which case a parole officer said that this – the witness is hysterical and therefore withheld the right of cross-examination in that case. And this Court reversed that case because it was not – it was not considered reliable. So now, there may be – there may come another case where there was a – when there is a true collision between the government, some overriding compelling interest of the government in admitting hearsay without – without putting a witness on the stand and the defendant's right to cross-examine somebody who has given information that is not held to be necessarily reliable. But in that case, you should hold – the government should at least do a bare minimum to demonstrate that that conflict is truly inevitable and that there is a true collision in this case. In this case, the government – nobody attempts to contact the witness about testimony until 4 p.m. the day before. There are months and months of notice that the defendant wishes to call and cross-examine this witness. No subpoena is ever attempted. And when the probation officer, not the government, but the probation officer, an officer of the court, calls the witness to attempt to get her to testify and assemble the government's case for it, that officer doesn't ask the salient question, are you afraid of the defendant in order to testify? The declarant in this case told us, gave us the reasons that she did not want to testify, and it was not fear of the defendant in that case. Why isn't this case more like Elizondo and Reza? There's a couple of very salient distinctions between Elizondo and Reza. The most significant of them is the absence of any physical evidence to corroborate the assault, or at least the – in Elizondo and Reza, they said the physical evidence was – this Court said the physical evidence was so strong as to make cross-examination effectively superfluous. And I don't think that we can remotely say that the physical evidence, an alleged mark on the cheek that nobody has ever observed, means that the defendant didn't have any valuable cross-examination that he could have engaged in that could have changed the outcome. In addition, some specific distinctions between those cases. In Elizondo, the declarant in that case told a police officer, I will not give a statement because I am afraid of the defendant. So there was an express link in the defendant's… Here, the express wasn't the night before the 4 o'clock call, but over time she had expressed fear and acted consistently with that. She would make an allegation and then would become afraid and back off, you know, and so that's very consistent with kind of the battered woman situation where you're afraid of the batterer and so after you come out and he's mad at you again, then you back off and so on and so forth. So why isn't that holistic picture of her relevant? It would be relevant if the government had… We would at least be presented with that question if the government had asked, had bothered to ask the simple question, do you wish to test… Do you not wish to testify because you were afraid of the defendant? In the absence of at least asking that direct question, we are… There is nothing, no objective fact in the record that would allay a concern that she was left off the stand because the government didn't think that she would be credible in that case. I'm not saying that that's what happened. I know the reputation of the prosecutor below him. That's not my belief, but a future prosecutor, if the government wins this case, will be able to point to that, to this record and say, you know, nothing in the record has to exclude the possibility that we are leaving her off the stand for a tactical or a strategic reason. So that salient absence of that fact in the record should cut very strongly against the government. In addition, I would submit that this Court has made a choice between two very compelling interests, between the fear of a witness of testifying and the defendant's right to cross-examine and the imperative that we have accurate fact-finding. It made that determination specifically in Baker, and it has made it more globally when it has said over and over again that reliability is the lynchpin of good cause, and it has consistently held that reliability is the most essential part of the defendant's due process right. And so even if we were presented with that question, I would submit that we would win in that case. And the reason for that is if you look more globally at that alleged pattern of abuse, all of that is sourced to the victim in this case. All of that is sourced to the declarant. None of it is corroborated by anything other than her statements and her behavior in this case. And so really what the Court would be doing if it found for the government in this case would be creating a blanket exception for domestic violence victims to good cause because it would be saying that even if the victim doesn't say they're afraid to testify, even if they're not subpoenaed, even if they are not asked whether they're afraid to testify, that the Court could leave them off the stand because it merely infers as much. And if you look at pages 166 to 168, you'll see that that is very starkly the question that's presented. Thank you. Thank you. You've reserved time for rebuttal. May it please the Court. Joe Magliolo for the United States. Based on the extensive evidence showing Mr. Alvear physically and psychologically abused Ms. Alvarez throughout the course of 2018, the District Court acted well within the scope of this Court's precedent when it found good cause not to require her attendance at the revocation hearing. Now, I'd like to address Judge Oldham your question. Isn't that kind of circular? I mean, we concluded based on the hearsay that she was abused and so she doesn't have to testify to the abuse. Isn't that kind of circular? Because their whole argument is he didn't do it. And she's the only one who said he did. And if you say, well, her saying he did means she doesn't have to come testify to that, then is there ever a need for the good cause exception in domestic violence cases? Because there just won't ever be any testimony. Certainly there is, Your Honor. And I don't think that this Court takes away big, bright-line standards in revocation cases. This Court is council district courts. These are taken on a case-by-case basis. It's a flexible requirement. And in this case, there's a great deal of evidence that demonstrates both fear on the defendant's part and, I believe, an issue of reliability about her story on March 18th. So all of that taken together, I don't think that that is going to be the situation in every case, and I don't think that district courts or this Court have allowed district courts to take away those sorts of bright-line rules in domestic violence cases. But would this case cause that? He's arguing that if we rule in your favor, then we've just opened the door to pretty much every domestic violence case. It would just be a matter of what did the victim tell the probation officer or the police officer or somebody of that nature. And we'll never hear from the victim. I think only if future cases bear the same facts as this case, which I think is highly unlikely, Your Honor. Why is that unlikely? Well, because there is a history of activity here. There's the allegations that she made to police officers in January of 2018. There's the phone call. There's a restraining order. There's future activity in October 2018. There's a long-standing relationship with her probation officer where she tells that time and time again she's fearful of him. The police officers who saw Ms. Alvarez on March 19, 2018 said she was nervous, kind of crying, appeared scared. So we've got a great deal of evidence, and I think more evidence collectively about the type of relationship between these two folks than appeared to be at issue in either Reza or Elizondo, where this Court found good cause in a fairly similar setting. Judge Oldham, to your question about the testimonial, I will concede this is not something I flagged in my brief, but in my short time to research the issue, I think at the very least the statements that Ms. Alvarez made to Officer Lindell would not be the sorts of statements courts have typically found to be testimonial, and I think if this Court relied solely on that, then it could find that the good cause test did not necessarily need to be done. That said, I probably would need to do a more fulsome bit of research on whether or not that question has ever arisen in the circuit. I've never seen it arise in the circuit. But the position in the United States is that whatever the right is, whatever the content of the right is at the revocation hearing, it has to be narrower than whatever rights you'd have at trial. Certainly, Your Honor, and that's true with respect to confrontation and a whole other panoply of rights that a defendant would otherwise have at a trial setting. So I realize that in the petition for revocation of the sentence, there were several allegations of supervised release conditions that had been violated. The one we've been focused on this morning, obviously, was the choking. Would any one of those be sufficient to uphold the revocation, or do you have – is there some – suppose some of the conditions were violated and others may have this, you know, confrontation problem associated with them, what would be the result? Well, I will say that there are three violations that turn on Ms. Alvarez's testimony. It's the assault, moving without telling the probation officer, and also filling out reports that were false based on having moved. Those all depend on Ms. Alvarez. He admitted to one, I would say, more technical violation about paying fines. Now, Judge Boyle, within her discretion, could revoke the supervised release based on any of these violations. That said, the choking incident was by a mile the most serious. It was the grade A violation, and it led to a higher policy statement range for sentencing. So, could she revoke on any of those? Absolutely. Would the sentence have been as high if it were just on the fine? I think it's unlikely. Turning – On the testimonial issue, isn't it your burden, as counsel opposite Mr. Page said, it's your burden to show it wasn't testimonial? I believe it is, Your Honor. So, if you don't even raise it and you wait for a very smart judge to raise it, then is that something we should reach? I certainly think it could be, and I would like the opportunity, if the court would allow, to potentially write a supplemental brief on this subject. And if I am given the opportunity to, I'll certainly address the burdens as well. But turning – assuming Arguendo's Judge Haynes mentioned that these statements were testimonial and we are operating, as the court has previously operated, just under the good cause standard, I disagree with my friend, Mr. Page, that this court has never found fear to be a sufficient basis for a witness not to come testify. And I think that is borne out most explicitly in the RESA decision. Now, I agree that there are some factual distinctions, but that said, in the RESA decision, the victim in that case, she provides a written statement to the police. She doesn't come testify. The government provides no reason why she doesn't come testify. But what this court said in that decision, I believe on page 272, is that the district court clearly found good reason why the government wouldn't want to call a domestic violence victim in that sort of setting. Now, I believe there what the court is saying is that fear can be inferred and it can be a good reason not to call the person at all. Now, here the government made efforts to call, and it just was unsuccessful in so doing. But I believe in that case what the court is saying is that – There's a few people who are available tomorrow if you call them at 4 o'clock today. So that's not much of an effort. Well, I – can I claim that this was a perfect process to get this particular witness? Now, I think the 4 o'clock timing is being a little bit overstated because what the record shows, I believe, is that efforts started before 4 o'clock. I think it's 3.30. I don't know – I don't know what time, Your Honor. It could have been earlier that week. But, I mean, granted I have not been a federal prosecutor, but I have done trials and I have presided over a lot of trials, and usually you're not just deciding what witnesses you're going to call the afternoon before the trial. I completely agree, Your Honor. And expecting to win by doing that. Well, I agree, Your Honor. I will say Ms. Lindell, Officer Lindell, has this phone number. She's been in contact. Perhaps she believes it was possible to get in contact with her to have her come. I think that they discovered the phone number that was successfully used very close in time to the hearing itself. Government didn't just use a known phone number and throw up their hands. They tried to contact her. They talked to her. They asked her to come to the hearing. Again, this is not a perfect setting, but the government did make an effort. But they didn't subpoena her. Did not subpoena her. But this court, I don't believe, has ever required a subpoena to be used in order to demonstrate good cause for a witness's unavailability. Mr. Page, the only case to which he cites is from the Ninth Circuit. And even in that case, the court didn't require a subpoena to be issued in order to demonstrate good cause. Like I mentioned previously, it's a flexible standard, and it's done on a case-by-case basis. And what this court does is it weighs the interests of both parties and then tests the statement for indicia of reliability. I believe the court in Reza indicated that the government can have an interest in not bringing a domestic violence victim to testify. And the court in Elizondo also indicated that the government has a significant interest in using evidence that was gathered immediately after the time of the assault. And that's precisely what happened here. And now, Judge Hayden, I'd like to also add one point to a question you asked about the statement that Mr. Alvear made to his probation officer. Up to the point in time when that statement was made, which I believe was in November of 2018, on page 182 in the record, Officer Lindell testified to the point that up to that point he had essentially denied anything had taken place, and then his story shifts a bit, and then he says, oh, I touched her and it caused a cut on her cheek. I'd also like to talk very briefly about the Baker versus Wainwright decision because in that case there's a number of added factors that simply are not present here. In that case, one of the reasons the court reversed was because it was a pro se defendant who had not been given counsel, and this court found that was inappropriate in the parole revocation setting. And in addition to that, there had been no underlying good cause finding. And on top of it, the only claim that this witness was, quote, hysterical was based on something not brought out at the original state-level parole revocation hearing, but I from one person concerning why that person did not ultimately come testify. So I'd also like to talk about the district court's fear decision because I agree in the vacuum, it may not be able to infer fear based on that call. But throughout the entire course of events between these two individuals, I think the district court rightly relied on that in its entirety to find why a witness like Ms. Alvarez might rightly be fearful of Mr. Alvear. Just to summarize, in January of 2000 … But being rightly fearful, that sounds like an objective test. The question really was, was she not willing to testify because of fear? And frankly, that's a subjective test. I agree. And perhaps I was inartful in putting it because I believe Judge Boyle inferred that fear from what she said, but I believe what Officer Lindell said about the statements Ms. Alvarez made the day before because she said she had work, afraid of public speaking, but she never called her back. And so from that, Judge Boyle inferred fear on behalf of the victim here, and that fear I think was rightly held given the threat of nude photographs being posted on the internet, and that was, I think importantly, that threat was made after Ms. Alvarez moves out because of the drug activities. She says she wants to make a Facebook account, and she gets choked and threatened with murder as a result. She gets a protective order. There's a court order related to the choking incident, but even despite that court order, Ms. Alvarez is following her home and text messaging her, so that entire course of conduct would cause fear in someone like Ms. Alvarez, and I believe that's what the district court inferred in this particular case. And finally, I don't think, again, as I mentioned, these cases, it's very hard to draw a great deal from these cases when it comes to cases in the future because they are so fact-intensive and because the good cause requirement is flexible. And as a result, I don't believe that prosecutors will be encouraged not to make great efforts based on this decision, given the fact that the prosecutors did make efforts in this case, and it simply did not work out, and given the, I think, fairly unique set of circumstances here. So I don't think that prosecutors are going to take much away from this case. I think if the court affirms … Well, again, I don't … I don't think that the first successful call was made at 4 o'clock, and again, it was not a perfect process, but efforts were, I think, made in advance of that. So if the court has no further questions, I would simply ask this court to affirm the district court's judgment that was made on the basis of this court's precedent. Thank you, Your Honor. Mr. Page? May it please the Court? Optimistically, I hope to make four points, perhaps very optimistically. The first is just to cover Judge Oldham's question about authorization to revoke on other grounds. Bare authorization to revoke a defendant does not defeat the right of cross-examination if it is important. That's Williams v. Johnson and Jemison. To respond to my friend's discussion of Reza, one important significant difference in Reza here, in addition to the physical evidence, is that the Reza court pointed out that the declarant in that case had given information that police had verified and found to be reliable and accurate in the past. There is nothing like that here. Both the good cause finding and all of the substantive information testimony that would have resulted in revocation were sourced exclusively to the declarant in this case. So if we take seriously the possibility that the defendant might be innocent of the conduct of which he has alleged, then there has to be some basis for him to come in and take a witness who appears to be one way on paper and determine whether the live flesh and blood witness is who they appear to be on paper. Maybe on paper she appears to be the typical domestic violence survivor in that case who makes an allegation and then withdraws and makes an allegation and withdraws and has been subjected to a lengthy pattern of abuse. But if we take seriously the possibility that the real situation might be more than what it appears on paper, then the Constitution demands that the person be brought in to testify in order to determine the truth of the matter. Is that argument or that point undermined by the fact that a state court entered a restraining order? Without knowing more about what the restraining order is, I don't think that we can say that. The restraining order may have been uncontested. Is it not in the record? The restraining order itself I don't believe is in the record. No, Your Honor. The fact that there was a restraining order is in the record, as is the fact that the declarant chose to withdraw it. The third point I would hope to make is that this Court, since Crawford, since testimoniality became the test, the critical factor in determining a Sixth Amendment confrontation right, has adjudicated many cases under this, arising under the Fifth Amendment, and has never discussed the testimoniality of the out-of-court declarant testimony. Do you think that the government has forfeited that argument by not making it? I'm afraid I do. Yes, Your Honor. I mean, the usual right, well, I think they waived it. I mean, the ordinary rule is that in briefing, the failure to raise an issue in briefing is a waiver of that. It's a little different on appellees, but because we can affirm for any basis supported by the record. But I'm just wondering because, you know, this isn't a civil case of John versus Jane. This is a criminal case in which we have to look at the government's burden. Does the government's burden of approving lack of testimoniality encompass having to raise it at some point, like before oral argument? Yeah, I think absolutely that that's a reasonable distinction to make. I don't have the case name, but I'm quite sure that this Court has held appellees to the loss of an issue that they didn't raise in defense of international rights. Remind me, you objected at the, or the counsel for the defendant objected at the hearing, at the admission of the testimony? Extensively. I've never been, never appeared in front of this Court more confident of preservation. And what was the basis of the, I'm sorry? I've never appeared in front of this Court more confident of preservation. No, no, I wasn't questioning you. I just, I couldn't, I didn't have it in front of me. So remind me, what was the basis of the objection? The objection was, it was based on the Fifth Amendment right to cross-examine and the assertion that it has to be reliable in this case, and the argument, the live argument was in addition that it is especially damaging to present allegations of this sort through a police officer. In your objection, and I'm using your to mean collectively as to the defendant, did you object that the statements that were offered were testimonial? No. So why would the government respond that, well, hold on, they're non-testimonial? Well, because the government would have the ability, would have the right to introduce the evidence if testimoniality were an element of the Fifth Amendment. I suppose they responded to your objection on the grounds that you made it. So I'm not, I don't know. We'll look at it. The absence of test, the absence of testimoniality is a, would, under your. Right. And therefore, but quite apart from the argument below, the argument here. Ms. Alvarez could talk, could speak English, let's say. That was an issue in the case for some reason. That would be a very different thing than if you're trying to rely on the content of what she said. And so it would be, and I realize testimoniality is a step further than that, but just even in the hearsay context, even in the, you know, we're looking at why are we introducing this. And so if it doesn't matter whether we need good cause in all of that, I don't think we would have gone down that path. That's what you're saying, right? I think that's precisely. And so if the government would say, look, I mean, why are we even talking about good cause? It ain't testimonial. You know, have a nice day. Then that would have been addressed at that point, but they didn't bring that up. Right. It would be particularly strange to impose a burden on the defense to argue an element that this court has never recognized since Crawford in spite of Powell versus Cooper, Jemison, medicine, care, carry, and justice, and other cases that have addressed this Fifth Amendment issue since Crawford. What was your fourth point really quickly? The fourth point was that if you look at those old lab reports, scientific evidence cases, Grandland, McCormick, those cases say that that was a close case, that those were close cases. This is so far from that in terms of reliability that we're clearly on the opposite side of that line. Okay. I appreciate both sides' arguments and the cases under submission.